BARNETTE, Judge.
Plaintiff seeks a judgment in the amount of $1,198 for a shipment of frozen shrimp delivered by the defendant Refrigerated Transport Co., Inc., to the consignee in Dayton, Ohio. The suit is based on defendant’s alleged violation of the contract in failing to collect for the shipment as required by the express C.O.D. provision of the waybill. From a judgment rejecting plaintiff’s demands, it has appealed.
The shipment of frozen shrimp was by refrigerated truck from New Orleans to Teter Seafood Co. in Dayton via Atlanta, Georgia. It left New Orleans on July 24, 1964, and on July 25 was picked up in Atlanta by defendant’s refrigerated truck driven by Johnny D. Berry, defendant’s employee. Deliveries of other freight were made in Knoxville, Lexington, Louisville, and Cincinnati en route to Dayton. There is a conflict in Berry’s testimony whether delivery was made in Dayton on Thursday or Friday. He was rather positive that delivery was on Friday, but was equally positive that it was on July 30. July 30, 1964, was a Thursday. This conflict in his testimony has an important bearing on the weight to be given to the balance of his testimony, since it is disputed by plaintiff’s witness James C. Farrelly. This will be discussed more fully below.
The waybill contains the usual information as to point of origin, shipper, consignee, description of shipment, freight charges, etc. It also has the following in bold red type written across its face:
“NOTE: THIS COD SHRIPMENT [sic], PICK UP CHECK THAT IS CERTIFIED OF MONEY ORDER MADE PAYABLE TO REFRIGERATED TRANSPORT CO INC FOR THE AMOUNT OF $1198.00, OR CASH JAMES FORTNER JR.”
Berry testified that when he reached the Teter Seafood Co. in Dayton to make delivery, he was told that the consignee could not make the payment upon which delivery was conditioned. He then telephoned the carrier’s dispatcher, James Fortner, in Atlanta for instructions. Mr. Fortner told him to telephone the shipper, New Orleans Shrimp Co., collect, and get instructions for disposition of the shipment. He testified that a lady answered the phone and his call was referred to a person named “Jim.” The matter was explained to the man known to Berry only as “Jim,” who then asked to speak to the employee of the Teter Seafood Co. After some conversation between the two, Berry was handed the phone and, according to his testimony, was told by “Jim” to deliver the shrimp; that Teter was going to send a certified check in the mail. Berry testified that he then had Teter’s employee acknowledge delivery by signing the waybill. A photocopy of the signed waybill in the record before us shows, in what appears to be the same handwriting, the following :
“D. Branch
Send Cert, check Special Del. 10:30 AM 7-30-64 to Payes [sic].”
The admissibility of this copy in evidence was objected to and sustained. A proffer was allowed, however, under LSA-C.C.P. art. 1636.
Mr. James C. Farrelly, vice president and treasurer of New Orleans Shrimp Co., acknowledged that he is addressed by his office associates as “Jim” and that there is no other person in the office by that name. He denied having received the collect call from Dayton. He also denied talking to Mr. Berry or giving instructions by telephone to anybody to make delivery of the shrimp without payment.
*27 There was filed in evidence plaintiff’s telephone bill which includes, among other long distance charges, a collect call from Dayton to New Orleans on July 30. No other calls to or from Dayton appear to have been made during the. month of July. When questioned about this call, Mr. Far-relly stated that to the best of his recollection he did not receive such a call. He admitted that he had no other customers in Dayton and the extent of his business with Teter Seafood Co. was this one shipment. His only explanation of the telephone call was, “The thing is, this call could have been from the customer inquiring on his shipments.” Other than himself there were a lady and two other persons, who could possibly have had knowledge of a phone call from Dayton. None of these were called to testify.
We have no doubt of the correctness of the photocopy of the waybill on which appears the handwritten notation of “D. Branch.” It appears to have been made from a duplicate copy of the original waybill kept by plaintiff and filed in evidence by it. The only difference is that the freight charges were shown on plaintiff’s copy, but not listed on the copy which accompanied the shipment and on which “D. Branch” made notation. A satisfactory explanation of defendant’s failure to produce the original was given, namely, that Interstate Commerce Regulations required that it be kept in the carrier’s files in Atlanta for three years. Even if the original had been offered, it would have had no greater weight for the purpose of proving the identity of “D. Branch” or by whom or when the handwritten notation was made. We think the photocopy, unquestionably an exact duplication of the original except as pointed out, should have been admitted into evidence with the objection to the handwritten notation going to its weight rather than admissibility.
Mr. Berry’s testimony that Teter’s employee signed the waybill upon delivery in Dayton and made the notation thereon immediately following the telephone call to New Orleans was not contradicted.
Mr. Berry testified that the shipment was picked up in Atlanta on July 25. The waybill verifies this departure date. This was a Saturday. His first stop was in Knoxville. On direct examination he was not asked the date of arrival in Knoxville, but was asked and testified as follows:
“Q. When did you leave Knoxville, Tennessee?
“A. That was Monday afternoon.
“Q. The next day, was it?
“A. Yes.” (Emphasis added.)
He traced his route to Lexington, Louisville, and Cincinnati on the following days successively (without specifically naming them). From Cincinnati he went in the afternoon of the same day to Dayton, a distance of 49 miles, arriving at a late hour and made delivery the next morning.
On cross-examination, plaintiff’s attorney picked up Mr. Berry’s statement that he left Knoxville on “Monday” and questioned him on the day of arrival in and departure from each city thereafter, from which it appears that he arrived in Dayton late Thursday evening. From this testimony of Mr. Berry, plaintiff argues that the delivery was made on Friday morning, July 31, and therefore Berry’s testimony about the telephone call and delivery on July 30 is discredited.
It is our opinion that delivery was made on Thursday, July 30, in spite of the foregoing testimony. It should be borne in mind that the testimony was given on August 4, 1966, about events which occurred in July, 1964. This could account for his confusion about the days of the week. The distance from Atlanta to Knoxville is a relatively short run for a transport truck, easily reached on the day of departure from Atlanta. The “next day,” when he said he left Knoxville, was therefore Sunday, rather than Monday as he *28 stated. It is significant that his testimony covering his day-by-day journey from Atlanta to Dayton makes no mention of Sunday. There is no testimony that he spent two nights in Knoxville. We conclude, therefore, that he left Knoxville on Sunday, which was “the next day” after leaving Atlanta. This would put his arrival in each of the following cities one day earlier than the days stated by him under cross-examination. The delivery, therefore, was made in Dayton on Thursday morning, July 30, as all the other evidence indicates.
Under a contract of shipment C.O.D. the carrier' acts as a bailee to transport the goods and as the consignor’s agent to collect from the consignee. This imposes upon the carrier the burden of proving what disposition he’has made of the goods entrusted to his care or of the money received in payment on delivery. It is only necessary for the consignor to prove that the goods were received by the carrier for delivery C.O.D. This makes a prima facie case, and the burden then shifts to the carrier. This is fully discussed by our predecessor court in Justin v. Delta Motor Lines, 43 So.2d 53 (La. App.Orleans 1949).
It is our opinion that the carrier has discharged the burden of proof by a preponderance of the evidence.
It should be pointed out as significant that plaintiff, having never before done business with Teter Seafood Co., made a credit investigation before making shipment. It was because of an unfavorable report that it made the shipment C.O.D. After payment was not made, in spite of this unfavorable report, plaintiff attempted to make collection from the consignee, Teter Seafood Co., to the extent of filing a claim in its bankruptcy proceedings. It seems more likely that if delivery had not been authorized, it would have made immediate demand on the carrier rather than pursue the vain attempt to collect from a known poor credit risk. This circumstance, we think, gives greater weight to the testimony of defendant’s witness Berry-
The carrier could have been more prudent in the manner in which this matter was handled. Rather than have its truck driver call the shipper direct for instruction, Mr. Fortner should have had him stand by while he (Fortner) called the carrier’s New Orleans division manager to contact the plaintiff, and then relay orders to its driver Berry. If this had been done, this dispute would have been avoided. However, notwithstanding this lack of prudence and diligence on its part, we think the evidence preponderates in defendant’s favor.
It is difficult to explain Mr. Farrelly’s denial of Mr. Berry’s testimony, but we must agree with the trial judge, who was in a better position to evaluate the credibility of the witnesses. Evidently he believed that Mr. Berry did testify truthfully, and there is no manifest error in his factual conclusions.
The judgment in favor of defendant Refrigerated Transport Co., Inc., against plaintiff New Orleans Shrimp Co., Inc., rejecting plaintiff’s demands and dismissing its suit, is affirmed. Plaintiff-appellant is cast for all costs of both courts.
Affirmed.